61 F.3d 725
 95 Cal. Daily Op. Serv. 5900, 95 Daily Journal
D.A.R. 10,130
Jack COHEN, on behalf of himself and all other similarly
situated, Plaintiffs-Appellees,
and
Anthony Maniscalco, II, Plaintiff-Appellant,
v.
RESOLUTION TRUST CORPORATION, in its capacity as receiver
for Imperial Savings Association, an insured
depository institution, a.k.a. Imperial
Federal Savings Association,
Defendant-Appellee.
Jack COHEN, on behalf of himself and all other similarly
situated; Mark Rozells, Plaintiffs-Appellees,
and
Michael Lea, Plaintiff-Appellant,
v.
RESOLUTION TRUST CORPORATION, in its capacity as receiver
for Imperial Savings Association, an insured
depository institution, a.k.a. Imperial
Federal Savings Association,
Defendant-Appellee.
 Nos. 94-55209, 94-55218.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1995.
Decided July 28, 1995.
 
 Paul M. Mahoney, Jones, Mahoney & Brayton, Claremont, CA, for plaintiff-appellant Maniscalco.
 Peter K. Rosen, Rosen Law Firm, Los Angeles, CA, for plaintiff-appellant Lea.
 Jeffrey Ehrlich, Resolution Trust Corp., Washington, DC, for defendant-appellee.
 Joel L. Incorvaia and Anna M. Mueller, Incorvaia & Glancy, San Diego, CA, for plaintiff-appellee Cohen.
 Appeals from the United States District Court for the Southern District of California.
 Before: WALLACE, Chief Judge, KOZINSKI and RYMER, Circuit Judges.
 Opinion by Chief Judge WALLACE; Dissent by Judge KOZINSKI.
 WALLACE, Chief Judge:
 
 
 1
 Cohen brought a class action against the Resolution Trust Corporation (RTC), in its capacity as conservator of Imperial Savings Association (Imperial), for bonus compensation allegedly owed to himself and similarly situated Imperial employees pursuant to a corporate bonus plan. Summary judgment was entered by the district court in favor of Cohen, and the RTC filed a timely appeal to this court. During the pendency of the appeal, the parties reached a settlement. The settlement was subsequently approved by the district court over the objections of two of the class members, Maniscalco and Lea. Maniscalco and Lea now appeal from the district court's order approving the class settlement. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 2
 * If the class plaintiffs had been entirely successful on appeal, they would have been entitled to a Receiver's Certificate in the amount of $864,000. The RTC would eventually pay the members of the class out of the liquidated assets of Imperial on a pro rata basis with other Imperial creditors. Thus, had the class plaintiffs not settled, the amount of any recovery would be uncertain and contingent on the claims filed by other creditors and Imperial's ultimate liquidation value. The class plaintiffs' recovery would also have been contingent on, and delayed by, the RTC's appeal to this court.
 
 
 3
 Under the terms of the settlement, the class plaintiffs receive a Receiver's Certificate in the amount of $575,000, but 64.22% of that amount, $369,265, will be paid immediately in cash. After payment of their legal fees and costs, totaling $123,741, the class plaintiffs will each receive an immediate cash distribution reflecting their pro rata share of the remaining cash, $245,524. Upon the ultimate liquidation of Imperial, the class plaintiffs will also receive the remaining value of the $575,000 Receiver's Certificate, as much as $205,735. Thus, the class plaintiffs have settled for an immediate $245,524, and an uncertain additional amount to be paid in the future, in place of a speculative and distant possibility of receiving $740,259 (face value of Receiver's Certificate minus legal fees and costs). Not a single member of the plaintiff class has objected to the fairness of this aspect of the settlement.
 
 
 4
 Under the terms of the settlement, however, the funds payable to Maniscalco and Lea are to be held in interest bearing escrow accounts pending the resolution of a separate civil action (the Alshuler case) in which the RTC is suing certain Imperial managers, including Maniscalco and Lea, for negligence and breach of fiduciary duty. This is the basis of the appeal before us.
 
 
 5
 In approving the settlement, the district court concluded that the amount of the settlement and legal fees were fair and reasonable. The district court expressed concern over the disparate treatment of Maniscalco and Lea, but concluded that the disparate treatment was rationally based on legitimate considerations and that there was no indication of any collusion against them.
 
 II
 
 6
 Our review of the district court's decision to approve a class action settlement is extremely limited. As we explained in Officers for Justice v. Civil Service Comm'n of San Francisco, 688 F.2d 615 (9th Cir.1982) (Officers for Justice ), cert. denied, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983), "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Id. at 625. "We are not to substitute our notions of fairness for those of the district judge and the parties to the agreement. Consequently, we will reverse only upon a showing that the district court's decision was a clear abuse of discretion." Id. at 626 (internal citations omitted).
 
 
 7
 In deciding whether to approve a class settlement, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id. at 625.
 
 
 8
 A class action settlement need not necessarily treat all class members equally. Holmes v. Continental Can Co., 706 F.2d 1144, 1148 (11th Cir.1983) (Holmes ). However, the class action settlement process can be subject to abuse, Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1169 (5th Cir.1978) (Pettway ), cert. denied, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979), and Federal Rule of Civil Procedure 23(e) therefore requires judicial approval of all class action settlements. In Holmes, the Eleventh Circuit correctly explained that "[w]hen a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness." 706 F.2d at 1147. The court in Holmes went on to conclude that the inference of unfairness that arises in the differential treatment of named plaintiffs "may be rebutted by a factual showing that the higher allocations to certain parties are rationally based on legitimate considerations. Settlements entailing disproportionately greater benefits to named parties are proper only when the totality of circumstances combine to dispel the cloud of collusion which such a settlement suggests." Id. at 1148 (internal quotation omitted).
 
 
 9
 The problem faced in Holmes, however, is different than the problem here. In Holmes, the eight named plaintiffs were to receive half of the total fund, see id. at 1145, resulting in the differential treatment of the named plaintiffs vis a vis the unnamed plaintiffs. In such a situation, heightened judicial review of the fairness of the settlement by the trial court is necessary. The trial court must investigate whether the named plaintiffs and their attorneys, who control the action, may be colluding with the defendants to increase their own recovery at the expense of the unnamed plaintiffs they have a duty to represent. In the case before us, there is less concern because the named plaintiffs are not receiving preferential treatment vis a vis the unnamed plaintiffs. Nevertheless, it is always possible that the named plaintiffs will treat a subgroup of the class differently in exchange for more preferential treatment of the remainder of the class, and the district court must therefore always examine settlements that treat some class members less favorably with care to ensure that the settlement is "fair, reasonable and adequate to all concerned." Officers for Justice, 688 F.2d at 625 (emphasis added); see also Pettway, 576 F.2d at 1217 (In a dispute over the allocation of a settlement fund, "objection by a few dissatisfied class members should trigger close judicial scrutiny to ensure that the burden of the settlement is not shifted arbitrarily to a small group of class members.").
 
 
 10
 The RTC argues that the fairness of the settlement should not be subject to more rigorous scrutiny because Maniscalco and Lea are not receiving a reduced share of the recovery to the benefit of other class members. While Maniscalco and Lea are given a fair share of the settlement fund, they are treated differently and less favorably than other members of the class in that their money will be held in an interest bearing escrow account pending resolution of the Alshuler case.
 
 
 11
 However, cases such as this are not susceptible to mechanical application of notions of "heightened scrutiny" or "rebuttable presumptions." As we have explained before, the district court's determination of whether to approve a class action settlement "is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Officers for Justice, 688 F.2d at 625 (internal quotation omitted). Nevertheless, the extent of investigation by the district court in review of proposed settlements must necessarily vary depending on the degree to which the settlement treats class members differently, and the explanations advanced for any such disparate treatment.
 
 
 12
 We hold that the district court did not abuse its discretion. The court found that the settlement in this case is fair and adequate to all class members, including Maniscalco and Lea, and that it was not the product of collusion. That determination is not subject to reversal. That Maniscalco and Lea are treated differently reflects the RTC's legitimate desire not to give a bonus to these individuals until allegations that they themselves are responsible for Imperial's failure are resolved in the Alshuler case, and to ensure that funds will be available to pay any judgment that may be entered against them. If Maniscalco and Lea breached the fiduciary duties owed to Imperial, they may not be entitled to any bonus compensation.
 
 
 13
 Maniscalco and Lea argue persuasively that the RTC cannot legally attach their share of the fund, garnish their wages, or setoff its contingent tort claims stemming from the Alshuler action. They contend not only that the terms of the settlement are unfair because of this, but that the settlement somehow constitutes one of these remedies. To the extent Maniscalco and Lea argue that the settlement is an invalid attachment, garnishment or setoff, their arguments are clearly wide of the mark. A class action settlement, like the settlement of any other legal claim, is a "private consensual agreement negotiated between the parties." Id.; see also Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir.1989) (Jeff D.) (treating class action settlement as a contract whose "enforceability is governed by familiar principles of contract law"). But see Epstein v. MCA, Inc., 50 F.3d 644 (9th Cir.) (distinguishing settlements in class actions from settlements in individual actions and refusing to enforce provision in class action settlement agreement purporting to release federal claims because state court lacked jurisdiction to adjudicate such claims), cert. granted, --- U.S. ----, 115 S.Ct. 2576, 132 L.Ed.2d 826 (1995). The fact that it is approved by the court does not change the fact that the settlement is essentially a private, contractual agreement between the parties. Even if the RTC could not have obtained one of these remedies in the absence of settlement, nothing prevents them from bargaining for them.
 
 
 14
 To the extent that Maniscalco and Lea argue that the settlement is unfair because it gives the RTC powers that it would not have had absent settlement, they stand on more solid footing. Even this argument, however, does not convince us that the district court abused its discretion. Maniscalco and Lea's arguments are premised on the notion that they are somehow entitled to these funds. But the RTC was under no obligation to pay them anything absent settlement. Because the judgment obtained by the class plaintiffs was being appealed by the RTC, any recovery still remained speculative. Moreover, any recovery that Maniscalco and Lea may have been entitled to would still be distant in time, subject to appellate proceedings and possibly additional proceedings on remand, not to mention the liquidation of Imperial.
 
 
 15
 Maniscalco also contends that the settlement is unfair because it will result in adverse tax consequences in that they will have to pay taxes now on money that they will not have access to until the future. Maniscalco, however, provides no authority to support his contention that he will be taxed on the income before he actually receives it.
 
 
 16
 Perhaps a settlement could have been reached that would have been more favorable to Maniscalco and Lea. But that is not the question we must decide. The only question to be decided is whether the district court clearly abused its discretion in concluding that the settlement is fair and adequate to all concerned and not the product of fraud or collusion. There was no clear abuse of discretion here.
 
 III
 
 17
 One final issue remains. Cohen, as class representative, argues that this appeal is moot. Because the RTC has already made the applicable disbursements to the class members, Cohen maintains that it is impossible to provide any remedy to Maniscalco and Lea. Maniscalco and Lea argue that the controversy is not moot because the court has the power to enter an order directing the release of their share of the fund.
 
 
 18
 "Courts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties." Jeff D., 899 F.2d at 758, citing Holmes, 706 F.2d at 1160. "The court's power to approve or reject settlements does not permit it to modify the terms of a negotiated settlement." Id., citing Evans v. Jeff D., 475 U.S. 717, 727, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986), and 3B Moore's Federal Practice at p 23.80 (2d ed. 1987). It may only approve or disapprove the proposal. Id. Thus, we cannot order a modification of the settlement agreement to provide for immediate payment to Maniscalco and Lea.
 
 
 19
 Nevertheless, from the present record we do not know whether it would be possible for the district court to revoke the settlement agreement in its entirety. Cf. Thibaut v. Ourso, 705 F.2d 118, 119-21 (5th Cir.1983) (appeal from order enforcing settlement agreement made moot by subsequent implementation of settlement where parties clearly could not be returned to legal position they held before settlement took effect). As this is a possibility, the appeal to determine whether the district court abused its discretion when approving the settlement is not moot.
 
 
 20
 AFFIRMED.
 
 KOZINSKI, Circuit Judge, dissenting:
 
 21
 At the heart of this case is a difficult but important question: May the district court approve a settlement that treats some class members worse than others for reasons entirely extraneous to the case being settled? The majority recognizes that Lea and Maniscalco "are treated differently and less favorably than other members of the class in that their money will be held in an interest bearing escrow account pending resolution of the Alshuler case." Majority op. at 729. It nevertheless approves the settlement because RTC had good reason to treat them differently. But, good though it be, RTC's reason has nothing to do with this case; the allegations in Alshuler, even if proved true, make Lea and Maniscalco no less entitled to an equal share of this settlement. Penalizing them here because of what they are alleged to have done elsewhere is no more appropriate than reducing their share for bad manners, poor personal hygiene or any other extraneous factor.
 
 
 22
 It's perfectly fine to treat class members different from each other because of factors intrinsic to the case being settled. Class members may, for instance, be awarded differing amounts depending upon the strength of their claims or the degree of their injuries. See, e.g., Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 629-30 (9th Cir.1982); Petruzzi's, Inc. v. Darling-Delaware Co., 880 F.Supp. 292, 300-01 (M.D.Pa.1995); Phemister v. Harcourt Brace Jovanovich, Inc., No. 77 C 39, 1984 WL 21981, at * 6-7 (N.D.Ill. Sept. 14, 1984). But class members with indistinguishable claims must receive settlement awards of equal value. The awards need not be identical, to be sure; they do have to be worth the same. This means that any additional burden certain class members must bear in one aspect of the settlement must be offset by additional benefits in another.
 
 
 23
 Under the terms of the settlement, Lea and Maniscalco--and no one else--must postpone enjoyment of their money for what may be many years, yet they are to receive no offsetting compensation.[1] If RTC is unwilling to treat Lea and Maniscalco the same as everyone else, their slice of the settlement fund must be adjusted upwards.[2] As it is, however, Lea and Maniscalco are impermissibly forced to subsidize the swift resolution of the other class members' claims.[3] See National Super Spuds, Inc. v. New York Mercantile Exch., 660 F.2d 9, 19 (2d Cir.1981) ("An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of [other class] members."); Petruzzi's, 880 F.Supp. at 300 (mere increased probability of subsequent settlement with other defendants did not "provide consideration" for sacrifices by class minority).
 
 
 24
 I know of no case where a settlement has been approved giving a smaller share of the bounty to class members whose claims stand on precisely the same footing as everyone else's. To the contrary, where members of the settling class are treated differently because of factors extraneous to the underlying lawsuit, courts withhold approval. See, e.g., Plummer v. Chemical Bank, 668 F.2d 654, 659-60 (2d Cir.1982); Petruzzi's, 880 F.Supp. at 299-302. I would remand so the parties can negotiate a new settlement giving all members of the class shares of equivalent value.
 
 
 
 [1]
 Though the impounded funds are to earn interest, being forced to accept money later rather than having the right to use it now is a burden for which one normally receives compensation. It is for this reason, for example, that fixed-term certificates of deposit command a greater yield than demand deposits
 
 
 [2]
 While it is difficult to determine the value of the burden Lea and Maniscalco must bear, it is not impossible. I would, of course, give great deference to the district court's judgment in this respect
 
 
 [3]
 The matter might be different if RTC were entitled to withhold payment by way of attachment or garnishment in Alshuler. In such circumstances, Lea and Maniscalco could be precluded from obtaining immediate payment by other means, so the settlement would subject them to no additional burden. But RTC has no right independent of the settlement to withhold payment to Lea and Maniscalco, which is why it seeks to structure the settlement in this way. See Majority op. at 730. RTC is thus using its bargaining power in this case to obtain a benefit in Alshuler