### In re SOUTHERN OHIO CORRECTIONAL FACILITY.

No. C–1–93–436.

United States District Court, S.D. Ohio, Western Division.

July 24, 1997.

272

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees (doc. 285), Defendants' Response (doc. 314), Plaintiffs' Supplemental Memorandum in Support of Request for Incentive Awards (doc. 338), Defendants' Memorandum in Opposition to Incentive Awards (doc. 337), and Defendants' Motion to Supplement the Record regarding the Request for Incentive Awards (doc. 356).

## BACKGROUND

The Court recently approved the Settlement[1] of this prisoner civil rights class action relating to the April, 1993 riot at the Southern Ohio Correctional Facility ("SOCF"), a maximum security prison located in Lucasville, Ohio. (doc. 332). Essentially, the Settlement provides for an agreement on eleven (11) issues that serve to "maintain or improve the quality of inmate life" and establishes a $4.1 million common fund, from which inmate damage claims and attorneys' fees and expenses will be paid. This Court approved the Settlement upon a finding that it was fair, reasonable, and adequate in all respects. (doc. 332).

The issue presently before the Court concerns the portion of Class Counsel's application for attorneys' fees and expenses in which Class Counsel requests an award of $25,000 to each of the named Plaintiffs, Darrin Morris and Eugene Adams, as an "incentive award."[2] "Incentive awards" are allotments awarded to class representatives in class action litigation which are over and above the amount they would be entitled to as class members. In our Order approving the Settlement, we awarded Class Counsel $1,658,-613.41 for their fees and expenses, and we reserved decision on this issue.

Class Counsel has requested that the class representatives, Mr. Morris and Mr. Adams, each be awarded $25,000 for their assistance during the course of the litigation. In support of this request, Class Counsel points out that the named Plaintiffs served as leaders of the class action since the appointment of Class Counsel by keeping other inmates informed of the progress of the case, studying the developments of the case, conferring with counsel as to strategy, and enduring inmate and guard harassment.

Defendants vehemently object to the granting of incentive awards to the two named Plaintiffs. They argue that such an award would violate the Settlement agreement. They also contend that incentive awards are not recoverable as a litigation "expense" and are inappropriate in this case.

## DISCUSSION

### I. INCENTIVE AWARDS GENERALLY

We begin our analysis by noting that incentive awards are not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class. Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *Thornton v. East Texas Motor Freight,* 497 F.2d 416, 420 (6th Cir.1974) (approving theory behind incentive awards in Title VII class action); *Day v. NLO, Inc. ("Fernald II")* No. C–1–90–067 (doc. 580, at 4–5) (S.D.Ohio 1995) (granting incentive awards from a settlement

---

**1.** The resolution of this case is memorialized in the Parties' Memorandum of Understanding ("MOU") and the General Protocol for Claims by Class Members Against the Settlement Fund (hereinafter collectively referred to as the "Settlement.") (docs. 269 & 273).

**2.** In the Order certifying this action as a class action, the Court ordered the two named Plaintiffs, Mr. Morris and Mr. Adams, to be the class representatives. Thus, throughout this Order, Mr. Morris and Mr. Adams are referred to as either the "named Plaintiffs" or the "class representatives."

fund); *In re: Fernald Litig. ("Fernald I"),* No. C–1–85–149 (doc. 1396, at 3–4) (S.D.Ohio 1994); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250–51 (S.D.Ohio 1991) (approving $50,000 to each of the six class representatives from a common fund); *In re Dun & Bradstreet Credit Serv. Customer Litig.,* 130 F.R.D. 366, 373–74 (S.D.Ohio 1990) (approving incentive awards in the amounts of $35,000 and $55,000 to five class representatives from a common fund).[3]

■ Such compensation to the named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives. *See, e.g., In re Dun & Bradstreet Credit Serv. Customer Litig.,* 130 F.R.D. at 374 (granting incentive award in part because class representatives "spent a great deal of time and were very active in reviewing the case and acting as advisors to Class counsel in the prosecution and settlement of this case"); *Genden v. Merrill Lynch, Pierce, Fenner & Smith,* 700 F.Supp. 208, 210 (S.D.N.Y.1988) (approving compensation to named plaintiff who also happened to be an attorney for his consultative services as a client during both the investigative and liti-

gation phases of the action); *Bogosian,* 621 F.Supp. at 32 (approving compensation to named class representatives for their "valuable consultative assistance to plaintiffs' counsel"); *White,* 822 F.Supp. at 1406–07 (approving awards to class representatives in part because they "took substantial risks to step forward" given the defendants' history of retaliation against the class members); 1 Alba Conte, *Attorney Fee Awards,* § 2.25 at 94 (2d ed.1993) (stating that "[s]everal courts have now recognized that representatives who do in fact perform these valuable services [e.g., as experts or consultants] are entitled to receive appropriate reimbursement for their efforts."); *Manual for Complex Litigation,* § 30.41 at 236, n. 86 (2d ed. 1985) ("Modest compensation may sometimes be merited for extra time spent by the class representatives in meeting with class members, gathering discovery materials on behalf of the class, and similar efforts.").

■ Defendants argue that incentive awards are inappropriate because the named plaintiffs in a class action are not entitled to preferential allocation from a common settlement fund. It is not always improper, however, for the class representatives to receive an award of a different amount as compared to the other class members. *Thornton,* 497 F.2d at 420 (recognizing propriety of rewarding class members who actively protested discrimination); *In re Jackson Lockdown/MCO Cases,* 107 F.R.D. 703, 710

---

**3.** *See also, White v. National Football League,* 822 F.Supp. 1389, 1406–07 (D.Minn.1993), *aff'd* 41 F.3d 402, 408 (8th Cir.1994); *In re Catfish Antitrust Litig.,* 939 F.Supp. 493, 503–504 (N.D.Miss. 1996) (approving incentive awards from a common fund because of the sacrifices of the named plaintiffs in pursuit of litigation on behalf of the class); *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299–300 (N.D.Cal.1995) (citing with approval *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240 (S.D.Ohio 1991) and approving incentive award in common fund case); *In re Chambers Dev. Sec. Litig.,* 912 F.Supp. 852, 863 (W.D.Pa.1995) (approving incentive award in common fund case); *In re Immunex Sec. Litig.,* 864 F.Supp. 142, 145 (W.D.Wash.1994) (citing with approval *Enterprise Energy Corp.* and approving incentive award from common fund to class representatives who obtained benefits for their fellow shareholders); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357–58 (N.D.Ga.1993);

*Spicer v. Chicago Bd. Options Exchange, Inc.,* 844 F.Supp. 1226, 1266–68 (N.D.Ill.1993) (citing 17 other courts where incentive awards approved); *Bogosian v. Gulf Oil Corp.,* 621 F.Supp. 27, 32 (E.D.Pa.1985); *see also* Sherrie R. Savett, *et al.,* "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to Named Plaintiffs," 936 *PLI/Corp.* 321 at 340 (1996) (citing 52 representative cases where incentive awards have been granted to named class representatives); Sofia C. Hubscher, "Making It Worth Plaintiff's While: Extra Incentive Awards To Named Plaintiffs In Class Action Employment Discrimination Lawsuits," 23 *Colum. Hum. Rts. L.Rev.* 463, 477–486 (1992) (approving incentive awards on the grounds that named plaintiffs have "spent sufficient time preparing for and participating in litigation, taken risks benefitting a large class of people, and sacrificed their own employment relationship in order to rectify a discriminatory situation.").

(E.D.Mich.1985) (approving preferential treatment to named plaintiffs over the other class members in part because they stepped forward to bring lawsuit and faced fear of retaliatory practices); *Manual for Complex Litigation*, § 30.41 at 236. In fact, compensation for class representatives for their services provided over and above those of a regular class member is not improper preferential treatment which would preclude a finding that a class action settlement is fair. *Id.*, § 30.41 at 236.

## II. INCENTIVE AWARDS AS REIMBURSABLE LITIGATION EXPENSES

■ Prior to the Fairness Hearing, Defendants filed an Emergency Motion for Expedited Disposition asking the Court to rule on their objection to the inclusion of the request for incentive awards in Class Counsel's fee application. In our Order denying Defendants' Motion, we stated that incentive awards can properly be characterized as a litigation expense. Defendants have challenged our reasoning. Thus, before reaching the question whether incentive awards to the class representatives in this case are appropriate, we must first determine the source of our authority to earmark a portion of the Settlement in this case for such compensation. The Settlement agreement does not specifically provide that incentive awards are to be made to the named Plaintiffs. However, the Settlement agreement does state that the attorneys' fees and expenses shall be deducted from the Settlement Fund. (doc. 269; MOU at ¶ 48).

■ Where, as here, a litigant has created a common fund by settlement for the benefit of a class, he or she is entitled to reimbursement for reasonable fees and expenses necessary for the successful prosecution of the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–79, 100 S.Ct. 745, 749–50, 62 L.Ed.2d 676 (1980); *Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir.1983) ("A litigant who creates a 'common fund' or 'substantial benefit' allocable with some exactitude to a definite group of persons may acquire an equitable claim against that group for the costs incurred in creating the fund or benefit."); Conte, *supra*, § 2.19 at 73. The common fund doctrine "operates when a plaintiff in an individual or representative capacity creates, increases, or preserves a fund whose monetary benefits extend to an ascertainable class of persons similarly situated." Conte, *supra*, § 2.01 at 23. "The common-fund doctrine reflects the traditional practice in courts of equity ... [and] rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co.*, 444 U.S. at 478, 100 S.Ct. at 749. Thus, under principles of equity, the court can designate a portion of the common fund to be set aside to cover the reasonable fees and expenses incurred in the creation of the common fund.

■ Examples of reimbursable expenses in common fund cases include witness fees, transcripts of hearings and depositions, telephone and copying charges, and settlement administration costs. Conte, *supra*, § 2.19 at 77; *cf. Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 639–40 (6th Cir.1979) (stating that expenses included in the concept of attorney's fees and thus authorized under 42 U.S.C. § 1988 include " 'incidental and necessary expenses incurred in furnishing effective and competent representation.' ") (citation omitted).[4] In addition, subject to reasonableness and relevance in amount, expert, specialist or consultant fees are reimbursable expenses in common fund cases. Conte, *supra*, § 2.19 at 77; *see also, In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366–67 (N.D.Cal.1996) (awarding expenses for experts, consultant and investigator fees from a common fund); *In re Chambers Dev. Sec. Litig.*, 912 F.Supp. at 863 (stating that "expert and consultant

---

4. The common fund doctrine is one exception to the American rule that fees are usually not recoverable absent statutory or contractual authority. *Wilson v. Intern. Broth. of Teamsters*, 83 F.3d 747, 753 (6th Cir.1996) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975)). Thus, as a common fund was created in this case as a part of the Settlement, we are not bound by only those examples of expenses which are authorized by 42 U.S.C. § 1988 as within the concept of attorney's fees.

fees may be entirely reasonable, necessary, and therefore reimbursable" from a common fund); *Spicer*, 844 F.Supp. at 1259, 1264 (approving reimbursement of consultant and expert witness fees).

For the reasons discussed below, we conclude that a reimbursable litigation expense may, in some cases, also include incentive awards. As we have stated earlier, many of the reasons given for approving incentive awards relate to the services rendered and the risks incurred by the class representatives on behalf of the class during the course of the litigation and settlement. As long as the services rendered are reasonable and relevant to the furtherance of the class' interests in the litigation, such compensation given to named plaintiffs is not unlike the fee awards given to experts, consultants or investigators which are reimbursable as a litigation expense from common funds; both compensate non-lawyers for services rendered in aid of the litigation.

Moreover, the nature of the services performed by many class representatives who have received "incentive awards" is similar to the nature of the services provided by experts, consultants, and investigators who assist with litigation. *See* Conte, *supra*, § 2.25 at 94 ("Class representatives often provide extensive benefits to the class similar to accountants, economists, and other litigation consultants and experts, over and above their normal role as a formally named adversary party in the litigation."). For example, a class representative may have specialized knowledge of the subject, of the particular facts or of the background of the litigation which is beneficial to the class counsel in pursuing the litigation.

Finally, a few courts have held that incentive awards can be characterized as a litigation expense. *See Matter of Continental Illinois Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (although denying the incentive awards in that case, the court did conclude that "[s]ince without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable."); *"Fernald I."*, No. C–1–85–149 (doc. 1396, at 3–4) (holding that the appropriate category for the class representatives' compensation would be under "expenses"); *Spicer*, 844 F.Supp. at 1267 (relying in part on reasoning of Seventh Circuit in *Matter of Continental Illinois Sec. Litig.* in approving incentive awards).

Therefore, we conclude that compensation to a class representative over and above what he may be entitled to as a class member can fairly be characterized as a litigation expense which is recoverable from a common fund created for the benefit of the entire class.

In this case, as Class Counsel have created a common fund for the benefit of a class, they are entitled to reimbursement of reasonable fees and expenses necessary for the successful prosecution of this litigation. The Settlement agreement provides that, "[s]ubject to the approval of the Court after the submission of an application(s) for payment of attorneys fees and expenses by Class Counsel, attorneys fees and expenses shall be paid to Class Counsel" and that such fees and expenses shall be paid from the Settlement Fund. (doc. 269; MOU at ¶¶ 47 & 48). Thus, incentive awards, which as we have held can be characterized as a litigation expense, can be awarded from the Settlement Fund subject to the approval of the Court.

## III. WHETHER INCENTIVE AWARDS ARE APPROPRIATE IN THIS CASE

The next issue we must decide is whether approving incentive awards to the named Plaintiffs here is appropriate given the circumstances of this case. Courts look to a number of factors in deciding whether to grant named plaintiffs incentive awards. Courts in this circuit assess the following factors: (1) whether the actions of the named plaintiffs protected the interests of the class members and have inured to the substantial benefit of the class members; (2) whether the named plaintiffs have assumed substantial indirect or direct financial risk; and (3) the amount of time and effort expended by the named plaintiffs in pursuing the class action litigation. *Enterprise Energy Corp.*, 137 F.R.D. at 250; *In re Dun & Bradstreet*

*Credit Serv. Customer Litig.,* 130 F.R.D. at 374.

■■■■ Additional criteria courts may consider in determining whether to approve an incentive award include: (1) the risk to the class representative in commencing the suit; (2) the notoriety and personal difficulties encountered by the class representative; (3) the duration of the litigation; (4) the extent of class representative's personal involvement in discovery; (5) the class representative's personal benefit (or lack thereof) purely in his capacity as a member of the class; and (6) the social benefit derived from the suit. *Van Vranken,* 901 F.Supp. at 299 (citing Richard D. Greenfield, "Rewarding the Class Representative: An Idea Whose Time Has Come," 9 *Class Action Rep.* 4, 6 (1986)); Jerold S. Solovy, *et al.,* "Class Action Controversies," 499 *PLI/Lit.* 7, at 447–48 (1994). It is within the court's discretion whether to approve an incentive award to a named plaintiff. *Van Vranken,* 901 F.Supp. at 299.

As we have demonstrated before, incentive awards are also justified upon the grounds that the class representatives have assisted class counsel by acting as consultants and advisors and have assumed the risk of retaliation and/or threats by acting as leaders in an unpopular lawsuit. *See supra* at 323.

We acknowledge that some of the criteria generally used to determine whether to approve incentive awards are not applicable to this case; for example, the class representatives did not incur any financial risk in lending their names to the class action litigation. Also, it is not clear from the record before us whether the class representatives had significant personal involvement in the discovery in this case beyond that conducted by the other class members. We also acknowledge that the propriety of approving incentive awards generally is the subject of vigorous debate by courts and commentators. *See, e.g., In Re U.S. Bioscience Securities Litig.,* 155 F.R.D. 116, 120–21 (E.D.Pa.1994); 2 Herbert Newberg and Alba Conte, *Newberg on Class Actions,* § 11.38 at 11–80 (3d ed.1992); Jerold S. Solovy, *et al.,* "The Head of the Class," *The National Law Journal,* Aug. 27, 1990, at 13. Nonetheless, having considered the relevant factors as well as the interests of the other class members, we find that the named Plaintiffs in this action are entitled to some compensation over and above what they are entitled to as class members for the services they provided and the risks they incurred in furtherance of the lawsuit and settlement.

The named Plaintiffs in this action endeavored to protect the interests of the class members and to bring about a substantial benefit to the class members in a number of ways. (doc. 285; Application of Fees and Expense of Class Counsel at 15–16). The named Plaintiffs have acted as class leaders since the appointment of Class Counsel, a fact even Reginald Wilkinson, Director of the Ohio Department of Rehabilitation and Corrections, verified at the Fairness Hearing April 15, 1997. (doc. 340; Fairness Hearing Tr. at 26). The named Plaintiffs have kept other inmates informed of the developments of the case and have consulted with Class Counsel as to proper course of conduct. *See id.* (Director Wilkinson testified that he understood from the reports from his staff that the named Plaintiffs have kept the other inmates informed of the progress of the case and conferred with Class Counsel about the proper course of action). This communication between the named Plaintiffs and the class members is crucial because it is difficult for the inmates to have direct, on-going contact with counsel given the class members' incarceration. *See id.* at 17–18. Moreover, as a class action requires the existence of class representatives and Defendants supported the class certification, the class representatives' work to communicate and advocate the Settlement agreement to the other class members worked to the advantage of Defendants as well as the class. *See id.* at 27 (Director Wilkinson agreed that it was to the advantage of the institution to have all the cases consolidated and brought as a class action); doc. 38 (Defendants did not object to class certification). Significantly, the named Plaintiffs have also exposed themselves to person risk because of their role as class representatives. *See id.* (Director Wilkinson agreed that the named Plaintiffs are at some personal risk because of their

role as class representatives). Finally, the named Plaintiffs have pursued this class action litigation for a substantial amount of time; it has been almost three years since Class Counsel were appointed.

■ Although we find that the circumstances here warrant an incentive award, we, however, decline to award the full amount requested by Class Counsel—$25,000 for each named Plaintiff. Instead, we ORDER the Settlement Master/Trustee to determine the appropriate amount of the incentive awards, upon application of Class Counsel.

The Court reaches this decision based upon the following considerations. First, the requested $25,000 is extremely disproportionate to the amount an inmate can earn otherwise. An inmate can earn only a nominal sum as compensation for his work performed while incarcerated in one of the State's penal institutions. (doc. 340; Tr. at 8). Specifically, an inmate is compensated at a rate of $14–$18 per month, or $216.00 per year. *Id.* at 8–10.

Secondly, although we realize it may be difficult to quantify the risks incurred by the named Plaintiffs, Class Counsel had not even attempted to document any of the work performed by the named Plaintiffs.

Finally, the Court is concerned with the way in which the issue of incentive awards was brought to the attention of the Court and the class members. The request for incentive awards was not the subject of a separate motion by Class Counsel but instead was included in the application for fees and expenses. Apparently, Class Counsel did not make this request known to the class members before the Fairness Hearing. Two class members have filed objections to the incentive awards in part on the grounds that they were unaware of the request for incentive awards and did not have the opportunity to object before or during the Fairness Hear-

ing. (doc. 356; filed under seal). We have reviewed the class member's objections. In consideration of the interests of the class members, the Settlement Fund from which they may be compensated will not be reduced further by the amount of the incentive awards; rather, the incentive awards will be deducted from the amount already set aside for fees and expenses.

Therefore, the Settlement Master/Trustee will determine the appropriate amount of the incentive award. Class Counsel's application should include affidavits from the class representatives which detail, to the best of their ability, the time and efforts expended in this case over the course of the litigation as well as any other documentation demonstrating their involvement in the case. The amount of the incentive awards shall come from the amount already set aside for attorneys' fees and expenses by our previous Order. In determining the amount of the incentive award, the Settlement Master/Trustee shall take into account the class members' objections as well any other consideration addressed in this Order.

## IV. DEFENDANTS' OBJECTIONS

Defendants object to the inclusion of incentive awards in Class Counsel's fee and expense application.[5] As is demonstrated below, we reject each of Defendants' objections.

■ First, Defendants argue that to award inmates under circumstances beyond those contemplated or implied by the Settlement agreement is inimical to the purpose of the Settlement agreement. The purpose of the Settlement, according to Defendants, is to compensate inmates only for their verifiable injuries resulting from the riot. The MOU sets forth the circumstances under which class members may receive compensation from the Settlement Fund in satisfaction of their damage claims.[6] (doc. 269; MOU at

---

5. The Court notes that Defendants may not have standing to challenge the incentive awards on the grounds that they agreed not to object to Class Counsel's fees and expenses application. (doc. 269; MOU at ¶49). Nonetheless, we will address their objections for the sake of completeness.

6. Specifically, Paragraph 43 of the MOU provides:

43. With the Court's permission, the services of the United States Magistrate Judge shall be utilized to establish protocols, to be agreed to by the parties, by which class members may file claims for damages from the Settlement Fund and to make the necessary determinations there-

¶ 43). Defendants argue that the limitations in this paragraph, which are also reflected in Paragraph 19 of the General Protocol, are the sole means by which a class member can receive compensation from the Settlement Fund. Thus, to allow the named Plaintiffs to receive money in the form of an incentive award would vitiate the purpose of the Settlement.

However, the paragraph referred to by Defendants describes the circumstances under which the inmates will be compensated for their damage claims arising from the riot; neither that paragraph nor any other part of the Settlement agreement specifically excludes all other reasons for compensation. More importantly, the Settlement agreement does provide for attorneys' fees and expenses approved by the Court to be paid from the Settlement Fund and thus, per this Order, provides for the payment of incentive awards as an expense. (doc. 269; MOU at ¶¶ 47–48); *see Fernald I*, No. C–1–85–149 (doc. 1396, at 3–4) (holding that incentive awards are appropriate even though not specifically provided for in the settlement agreement but where the settlement agreement provides that fees and expenses are to be allocated by the Court). As the Settlement agreement covers incentive awards through its provision for attorneys' fees and expenses, we need not look to the Parties' unwritten intentions or underlying negotiations. *See Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987) (stating the general rule of contract construction that the intent of the parties is presumed to reside in the language they choose in their agreement).

■ Secondly, Defendants argue that granting incentive awards to the named Plaintiffs here is inappropriate and against public policy. The Court acknowledges that the prospect of granting two inmates incentive awards has generated a lot of controversy within the community and for that reason takes this opportunity to explain further why we have approved the incentive awards.

Much of the controversy, we suspect, arises from the use of the phrase "incentive award." We approve the incentive awards here as compensation for the services rendered and the risks incurred by the named Plaintiffs in pursuit of the class action litigation, not as an incentive for the class members to sue in the future. It is critical to separate the facts as to this particular case from the "message" to future inmate litigants allegedly made by the approving of incentive awards in this case.

There were approximately thirty-seven (37) individual cases already filed by the time that the United States Magistrate Judge ordered them to be consolidated in light of the class action Complaint. The named Plaintiffs had already filed their individual cases before class certification was considered; in fact, one of the named Plaintiffs, Darrin Morris, filed the first individual case resulting from the 1993 riot. There is no evidence in the record that, at the time those cases were filed, or the time Mr. Morris and Mr. Adams were chosen to be class representatives, incentive awards were ever discussed. Thus, these class representatives, and all the other class members for that matter, were not promised compensation in exchange for filing a lawsuit arising from the 1993 riot.

Moreover, class representatives who will fairly and adequately protect the interests of the class are required in a class action such as this. In certifying the class, the Court found that the named Plaintiffs would do just that, and their efforts to represent the interests of the class have proven worthy of extra

---

under. A class member, or an administrator or executor on behalf of a deceased class member's estate, shall be permitted to present claims and receive compensation from the Fund only if the class member making the claim, or on whose behalf the claim is being made, was (1) murdered during the riot; (2) physically injured during the riot; or (3) lost property during or as a consequence of the riot. In the event that money has already been paid to a class member for property lost due to the riot, said payment shall be deemed a credit towards any monies determined to be owing a class member for his claim for lost property. The Magistrate may award compensation to a class member outside the three categories listed in this paragraph only upon a showing by the class member that he has suffered any other serious riot-related injury and that the relief available under the Operational Provisions of this Memorandum are seriously inadequate for that class member given his personal situation and the denial of compensation to him would impose an injustice.

compensation. It should also be pointed out that Defendants have benefitted from the resolution of all riot-related claims by way of a class action. This class was certified under Rule 23(b)(2) as a mandatory non-opt out class, that is, class members do not have a right to opt out of the class action prior to judgment on the merits. The Settlement of this class action resolves forty-two (42) individual cases which had been consolidated with the class action, as well as releases Defendants from any and all present and future claims against them which arise from the events and conditions of confinement related to the April, 1993, disturbance at SOCF. Defendants were in favor of the class certification, and it is the Court's impression that Defendants sought the class action to achieve closure to the continual bringing of riot-related lawsuits against them. Given the named Plaintiffs' role in pursuing this class action and in communicating the Settlement negotiations and developments to the class, Defendants as well as the class were well-served by the efforts of the named Plaintiffs. (doc. 340; Tr. at 27).

Defendants are concerned with the message that approving incentive awards will allegedly send to an already litigious inmate population; they worry that it will give inmates an incentive to sue more frequently.

We disagree with Defendants' position for a number of reasons. The only "message" sent by our approving the incentive awards here is that if class representatives provide services and incur risks in pursuit of class action litigation which benefit the class, they can be reasonably compensated for their time and effort. There are factors that militate against the assumption that approval of incentive awards under those circumstances will automatically cause more inmates to sue. Namely, approval of an incentive award is not guaranteed; it is contingent upon the class securing a settlement or judgment for the benefit of the class and upon the nature and extent of the services provided by the class representatives which are judicially reviewed. Also, an incentive award is only applicable in class action litigations; the majority of the lawsuits filed by inmates are individual actions.

Furthermore, we emphatically disagree with Defendants' unfair assumption that all inmate lawsuits are frivolous and thus ought to be discouraged. Inmates have a constitutional right to access to the courts to redress their grievances regarding the conditions of their confinement, and they cannot be penalized for exercising this right. We realize that the thrust of current state and federal legislation is to reduce the number of inmate lawsuits; yet, we should not chill the bringing of legitimate, non-frivolous class actions for violation of federal constitutional rights such as this one.

Finally, as this Court has stated on a number of occasions, we strongly believe that it is better for the inmate population and the state penal institutions as a whole that an inmate bring his grievance with the institution by way of a lawsuit rather than let his anger simmer and build with no other outlet until it erupts into violence within the institution.

## CONCLUSION

Accordingly, we GRANT Class Counsel's request for "incentive awards" to be paid to the two named Plaintiffs, Darrin Morris and Eugene Adams. The amount of the award shall be determined by the Settlement Master/Trustee upon application of Class Counsel in accordance with this Order. The amount of the award shall be deducted from the $1,658,613.41 already awarded Class Counsel for their fees and expenses incurred in this litigation.

SO ORDERED.