*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0072P (6th Cir.)
File Name: 03a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EVERETT HADIX et al.,
        *Plaintiffs,*

C. PEPPER MOORE,
       *Plaintiff-Appellant,*

    *v.*

PERRY JOHNSON et al.,
       *Defendants-Appellees.*

No. 01-2247

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 80-73581—John Feikens, District Judge.

Submitted: January 30, 2003

Decided and Filed: March 10, 2003

Before: BATCHELDER, MOORE, and CLAY, Circuit
Judges.

_____

## COUNSEL

**ON BRIEF:** Leo H. Friedman, OFFICE OF THE
ATTORNEY GENERAL, CORRECTIONS DIVISION,

Lansing, Michigan, for Appellees. C. Pepper Moore, Jackson, Michigan, pro se.

───────────────

**OPINION**

───────────────

KAREN NELSON MOORE, Circuit Judge. The inmate plaintiff C. Pepper Moore filed a motion for costs and an incentive award for his role as a class representative in the continuing *Hadix* litigation, a civil rights action brought by Michigan prisoners alleging unconstitutional conditions of confinement that was settled by consent decree. The district court judge denied Moore's motion for an incentive award and for costs. We **AFFIRM** that decision.

## I. BACKGROUND

The present appeal focuses on a very narrow issue within the broader *Hadix* litigation. The *Hadix* litigation began in 1980, when a group of male prisoners at the State Prison of Southern Michigan, Central Complex (SPSM-CC) filed suit against the prison, claiming that the conditions of their confinement violated several provisions of the Constitution. The class of plaintiffs was represented by counsel throughout the litigation, and in 1985, the class entered into a consent decree with prison officials that attempted to insure the constitutionality of the conditions at SPSM-CC. The consent decree did not award damages, incentive awards, or costs to any of the individual plaintiffs.

Two years after the consent decree was entered, in November 1987, the district court awarded attorneys' fees to the *Hadix* plaintiffs for postjudgment monitoring of the defendants' compliance with the decree. The consent decree remained in effect until 2001, when in response to the Prison Reform Litigation Act and a decision of this court, *see Hadix v. Johnson*, 228 F.3d 662 (6th Cir. 2000), the district court largely terminated the consent decree.

This appeal focuses on the role of C. Pepper Moore, now acting pro se, who claims a right to receive an incentive award and costs. Even though he was represented by counsel during the relevant time periods, Moore personally claims a right to costs and an incentive award for his own efforts in the *Hadix* litigation. The parties agree that Moore has been extensively involved with the *Hadix* litigation. Moore became involved with the case in 1983. He was made a named class representative in 1988. According to all accounts, Moore has spent significant amounts of time aiding the *Hadix* plaintiffs, both in the initial litigation and in the monitoring of the consent decree. Moore claims that he has paid for numerous litigation-related expenses out of his own pocket. His affidavit alleges, for instance, that he has bought several typewriters and paid for their repairs. He claims that he has spent at least $10 per week to copy and distribute to other class members filings of counsel and court orders. He has allegedly paid for mailing and copying costs, and for footlockers to store his documents. Moore also claims that he gave up his prison job at the Michigan Braille Transcribing Services because of his dedication to the litigation. Moore estimates his expenditures to be approximately $30,955.04, although he has not provided the court with any documentation of these receipts except in a sworn affidavit.

## II. ANALYSIS

### A. Jurisdiction

The underlying civil rights action was brought under 42 U.S.C. § 1983. The district court had original jurisdiction under 28 U.S.C. § 1331. The jurisdiction of the district court over Moore's motion for costs and an incentive award is unimpaired by the fact that the *Hadix* consent decree is no longer in effect, having been terminated on June 29, 2001. Courts have jurisdiction to hear claims about costs after final judgment. *See Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268 (1988) (noting that a motion for costs under Federal Rule of Civil Procedure 54(d) is a post-judgment motion not appropriate until after judgment); *Clarke v. Mindis Metals,*

*Inc.*, No. 95-5517, 1996 WL 616677, at *11 (6th Cir. Oct. 24, 1996) (noting that "Fed R. Civ. P. 54(d)(1) provides no time limit regarding motions for costs"). This court has jurisdiction under 28 U.S.C. § 1291.

## B. Standards of Review

Although this circuit has never addressed the issue, we agree with the circuit courts that have concluded that a district court's denial of an incentive award should be reviewed for an abuse of discretion. *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000), *cert. denied*, 532 U.S. 1038 (2001); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (applying an abuse-of-discretion standard where a district court granted an incentive award to class representatives). We review for an abuse of discretion the denial of costs. *See Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001) (using an abuse-of-discretion standard in reviewing a grant of costs, and explaining that Federal Rule of Civil Procedure 54(d) "allows denial of costs at the discretion of the trial court") (citation omitted).

## C. Incentive Award

Moore's first claim is that the district court erroneously denied him an incentive award. Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit. Numerous courts have authorized incentive awards. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir.), *cert. denied*, 123 S. Ct. 108 (2002); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463; *see also In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 & n.3 (S.D. Ohio 1997) (collecting cases). These courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class. Yet applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for

*Federal Practice and Procedure* § 2666, at 204 (3d ed. 1998) (stating that "items such as . . . investigatory expenses will not qualify either as statutory fees or reimbursable costs" and that "[t]hese expenses must be borne by the litigants"). Moore's lost wages, copying costs, word processors and repairs, supplies, storage lockers, and postage simply are not costs within the meaning of the rule.

## III. CONCLUSION

C. Pepper Moore incurred numerous expenses in working to inform his fellow inmates about the *Hadix* litigation. Nonetheless, for the reasons explained above, the district court properly denied his motion for an incentive award and costs. We **AFFIRM** the judgment of the district court.

This decision is correct, but a little explanation is necessary. Prevailing parties are usually entitled to costs. *See* Fed. R. Civ. P. 54(d) (noting that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs"). Although Rule 54(d) allows a party to be reimbursed for its "costs," this term is given a far narrower interpretation than its vernacular meaning might suggest. *See* Charles Alan Wright et al., 10 *Federal Practice and Procedure* § 2666, at 202 (3d ed. 1998) (noting that "[a]lthough 'costs' has an everyday meaning synonymous with 'expenses,' the concept of taxable costs under Rule 54(d) is more limited"). Taxable costs are listed in 28 U.S.C. § 1920. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 875 (6th Cir. 2000) ("Title 28 U.S.C. § 1920 lists the items a court may tax as 'costs' to a prevailing party under Rule 54(d)."), *cert. denied*, 532 U.S. 953 (2001). Title 28 U.S.C. § 1920 lists six items:

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The "costs" that Moore lists do not qualify as costs within the meaning of this statute. Moore does not seek reimbursement for any court fees, docket fees, special interpretation costs, or for compensation of his experts. Moore instead seeks to label his general expenditures as "costs." This, however, is inconsistent with the concept of costs articulated in § 1920. *See* Charles Alan Wright et al., 10

personal gain. *See* 2 Herbert Newberg & Alba Conte, *Newburg on Class Actions* § 11.38, at 80-81 (3d ed. 1992) (noting that "[t]he propriety of 'incentive' awards to named plaintiffs has been rigorously debated"); *see also Cohen v. Resolution Trust Corp.*, 61 F.3d 725, 728 (9th Cir. 1995) (holding that "'[w]hen a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness'") (citation omitted).

This court has never explicitly passed judgment on the appropriateness of incentive awards. *See In re S. Ohio Corr. Facility*, 24 Fed. Appx. 520, 526, 2001 WL 1667267, at *5 (6th Cir. Dec. 26, 2001) (noting that "[t]his court has not previously been called upon to approve a grant of incentive awards, and we intimate no view as to the propriety of such awards in general") (footnote omitted).[1] We note that some district courts in our circuit, however, have given incentive

---

[1] We note that we approved something similar to an incentive award in *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974). In *Thornton*, the East Texas Motor Freight Company had denied black drivers the opportunity to be promoted from one position to another. This court affirmed a consent decree which gave heightened seniority to black city-drivers who had filed charges with the EEOC, which helped to bring the issue to the Commission's attention. Some district courts in this circuit had construed *Thornton* as suggesting that incentive awards are proper in some circumstances. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001); *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). Yet, in an unpublished opinion, a panel of this court explained that *Thornton* did not involve incentive awards, because the preferential treatment given to the drivers who filed with the EEOC was due to their actions before the litigation began, rather than their actions during the litigation. *See In re S. Ohio Corr. Facility*, 24 Fed. Appx. 520, 527 n.3, 2001 WL 1667267, at *5 (6th Cir. Dec. 26, 2001). We note that in *Thornton* we approved the district court's award of "earlier seniority for those drivers who actively sought an end to the company's . . . policy" because they "should benefit more than those who were merely passive" and because they "protest[ed] and help[ed] to bring rights to a group of employees who have been the victims of discrimination." *Thornton*, 497 F.2d at 420. We need not decide here whether *Thornton* involved a typical incentive award.

awards. *See, e.g.*, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001); *In re Revco Sec. Litig. Arsam*, No. 1:89CV0593, 1993 WL 497208, at *3 (N.D. Ohio Sept. 14, 1993); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990).

Although we think there may be circumstances where incentive awards are appropriate, we need not resolve the difficult issue of detailing precisely when they are appropriate — for this case is clearly not a case where an incentive award is proper. As both the district court and the defendants note, incentive awards are usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (describing the common-fund doctrine); *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 & n.3 (S.D. Ohio 1997) (listing cases where incentive awards have been taken out of a common settlement fund). Thus, when a class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool. *See Enter. Energy Corp.*, 137 F.R.D. at 251 (approving incentive awards of $50,000 to each of the class representatives out of a settlement fund of $56.6 million); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. at 373-74 (approving incentive awards ranging from $35,000 to $55,000 out of a $18 million settlement fund); *Brotherton*, 141 F. Supp. 2d at 913-14 (granting a $50,000 incentive award out of a $5.25 million fund). Without a common fund, however, there is no place from which to draw an incentive award. Unsurprisingly, we are unable to find any case where a claim for an incentive award that is not authorized in a settlement agreement has been granted in the absence of a common fund.

Here there is neither authorization in the consent decree for this incentive award nor a common fund from which it could be drawn. As a result, it is plainly inappropriate to grant an incentive award. We also note that this result comports with our holdings on consent decrees generally. Moore here is essentially asking the defendants to take on the additional burden of an incentive award above and beyond the liabilities they had agreed to in the consent decree settling the lawsuit — for the absence of a common fund here means that Moore would have to obtain the incentive award not from a communal fund belonging to him and his fellow class members, but from the defendants directly. Moore phrases it as merely forcing the defendants to reallocate some of the money from the implementation of the consent decree to his incentive award, but that misses the point. "A consent decree, although in effect a final judgment, is a contract founded on the agreement of the parties." *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir.), *cert. denied*, 506 U.S. 827 (1992). "'It should [therefore] be construed to preserve the position for which the parties bargained.'" *Gonzales v. Galvin*, 151 F.3d 526, 531 (6th Cir. 1998) (citation omitted). Forcing the defendants to pay the incentive award is certainly an additional expenditure, and it is therefore impermissible. *See Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1153 (6th Cir. 1992) (holding that an increase of one party's "financial obligations under the consent decree beyond [the agreed-upon amount] constitutes an abuse of discretion and cannot stand"), *cert. denied*, 509 U.S. 905 (1993).

**D. Costs**

Moore's second claim is that he is entitled to costs. He includes as his "costs" his claims for lost wages, copying costs, word processors and repairs, supplies, storage lockers, and postage in the total amount of $30,955.04. The district court quickly resolved this claim, holding that no statute or case law allows Moore to recover these expenses without explicit authorization in the consent decree.