2007 ND 163

**RITTER, LABER AND ASSOCIATES, INC.; Elizabeth Cantarine, Personal Representative of the Estate of Eugene A. Burdick; and Russell L. Kiker, Plaintiffs and Appellants**

v.

**KOCH OIL, INC., a division of Koch Industries, Inc., Defendant and Appellee.**

No. 20070029.

Supreme Court of North Dakota.

Oct. 16, 2007.

Ronald H. McLean (argued) and Jane L. Dynes (on brief), Serkland Law Firm, Fargo, N.D., Gary J. Gordon (argued), Rider Bennett LLP, Minneapolis, MN, and Marvin L. Kaiser (appeared), Kaiser Law Firm, Williston, N.D., for plaintiffs and appellants.

Charles F. Webber (argued) and Jerry W. Snider (on brief), Faegre & Benson, Minneapolis, MN, and John W. Morrison, Jr. (appeared), Fleck, Mather & Strutz, Bismarck, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Ritter, Laber and Associates, Inc., Elizabeth Cantarine, as the personal representative of the estate of Eugene Burdick, and Russell Kiker appeal from a district court judgment approving a settlement in a class action and awarding attorney fees and costs to the plaintiffs and an incentive payment to the three class representatives. We affirm, concluding the court did not err in refusing to reform the parties' settlement agreement and did not abuse its discretion in awarding attorney fees and incentive payments.

I

[¶ 2] Between 1975 and 1988, Koch Oil, Inc. ("Koch") purchased oil and gas in North Dakota. For some of its purchases Koch paid the royalty and leasehold owners based upon "hand gauged" measurements at the well site. At the pipeline selling points, when Koch sold the oil to others, a volumetric meter was used to measure the oil. Because of differences in measured volume between the two methods, Koch allegedly paid the owners for less oil than it actually received.

[¶ 3] In 1986, the North Dakota State Tax Commissioner assessed gross production tax and oil extraction tax on the addi-

tional oil for tax years 1980 to 1983, and this Court upheld the assessment on appeal. *See Koch Oil Co. v. Hanson,* 536 N.W.2d 702, 704 (N.D.1995). Upon learning of the disputed measurements, some royalty and leasehold owners brought this class action alleging conversion and unjust enrichment and seeking an accounting. The class included all persons and entities owning royalty and leasehold interests in wells from which Koch purchased or sold oil in North Dakota from 1975 through 1988 where the oil was measured by hand gauging. The class includes approximately 6,000 owners of royalty and leasehold interests in approximately 2,300 wells in North Dakota.

[¶ 4] In three prior appeals, this Court resolved issues relating to certification of the class and summary judgment. *See Ritter, Laber & Assoc., Inc. v. Koch Oil, Inc.,* 2004 ND 117, 680 N.W.2d 634; *Ritter, Laber & Assoc., Inc. v. Koch Oil, Inc.,* 2001 ND 56, 623 N.W.2d 424; *Ritter, Laber & Assoc., Inc. v. Koch Oil, Inc.,* 2000 ND 15, 605 N.W.2d 153. The case was scheduled for trial in April 2005, but the parties reached a tentative settlement agreement shortly before trial. Negotiations ultimately produced a final written settlement agreement.

[¶ 5] The settlement agreement provided for an $18 million fund, with payments to be distributed to class members based upon a mathematical formula set forth in the agreement. The settlement provided that the district court could award part of the fund for attorney fees and actual costs incurred in the litigation. The agreement also provided that Koch would retain any part of the fund which was unclaimed.

[¶ 6] In a January 31, 2006, petition, the plaintiffs requested attorney fees in the amount of $6 million, costs of $634,952, an escrow fund of $106,000 for future litigation expenses, and an incentive payment to the class representatives of $180,000. The trial court allowed attorney fees of $3,930,172, costs of $634,952, an escrow fund of $106,000, and incentive payments of $75,000 to be divided equally among the named class representatives. Subsequently, the plaintiffs filed a motion seeking reformation of the settlement agreement, alleging that one of the figures agreed to in the mathematical formula for calculating payments to individual class members did not accurately reflect the intent of the parties. The district court denied the motion to reform the agreement.

[¶ 7] The plaintiffs in their appeal from the judgment approving the settlement agreement, argue the trial court erred in failing to reform the agreement for mutual mistake and abused its discretion in awarding attorney fees and incentive payments to the class representatives.

II

[¶ 8] The parties engaged in extensive settlement negotiations over a period of several months, resulting in more than twenty separate drafts of the proposed agreement. The agreement included an $18 million settlement fund, with payments to individual claimants calculated according to a complex mathematical formula. Under the formula, each individual claimant would receive a portion of the $18 million fund, after deduction of attorney fees and incentive payments, based upon the percentage of the value of the oil sold by that individual claimant to the value of all oil purchased by Koch in North Dakota during the relevant period. The equation used by the parties in early drafts of the settlement agreement was essentially: $(a \div b) \times [18,000,000 - (c + d)]$ where "a" equals the amount Koch had paid to the individual claimant, "b" equals the aggregate amount Koch paid to class members during the relevant period,

"c" equals allowed attorney fees, and "d" equals incentive payments approved by the court.

[¶ 9] As negotiations continued, Koch suggested the parties should incorporate an actual number in place of "b" in the formula. Koch ultimately calculated the value of "b" as \$4,259,377,938. Koch provided the plaintiffs with full documentation of how it had arrived at that figure, and the plaintiffs affirmatively acknowledge that Koch believed this to be the correct figure, there was no fraud involved, and the number was "based on the best information the parties had at the time." The parties' correspondence during the negotiations demonstrates that they knew the \$4.2 billion figure was an approximation and not a mathematically exact determination of the value of oil purchased by Koch.

[¶ 10] The final settlement agreement adopted by the parties and approved by the court provided:

> The amount of the payment to each Authorized Claimant shall be calculated according to the following mathematical formula:
>
> $$(a \div b) * (18,000,000 - (c + d))$$
>
> where
>
> a = the aggregate amounts paid by Koch directly to the Authorized Claimant for oil purchased from leases in North Dakota, South Dakota, and/or Montana between January 1, 1975 and December 31, 1988, as determined by Koch's "paid crude" records (excluding purchases of natural gas and natural gas products)
>
> and
>
> b = 4,259,377,938
>
> and
>
> c = Allowed Attorneys' Fees
>
> and
>
> d = Allowed Incentive Payment

[¶ 11] After the settlement agreement was approved by the court, a claims administrator was appointed. The claims administrator ultimately calculated that the actual aggregate amount of oil purchased by Koch during the relevant period was \$3,603,961,778, or \$655,416,160 less than the value of "b" agreed to by the parties. Because the agreed upon \$4.2 billion denominator in the equation is larger than the actual aggregate purchases, each claimant will receive less from the \$18 million settlement fund than if the \$3.6 billion figure had been used as the denominator. The court calculated that each claimant would receive approximately 15 percent less under the formula with the \$4.2 billion denominator. The plaintiffs claim this was a *mutual mistake of fact*, and the court should grant equitable reformation of the parties' agreement to reflect their true intent.

[¶ 12] Reformation is an equitable remedy used to reframe written contracts to accurately reflect the real agreement between contracting parties. *Biteler's Tower Serv., Inc. v. Guderian*, 466 N.W.2d 141, 143 (N.D.1991) (quoting Black's Law Dictionary 1152 (5th ed.1979)). Reformation of a contract for mutual mistake is governed by N.D.C.C. § 32–04–17:

> When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

[¶ 13] In *Ell v. Ell*, 295 N.W.2d 143, 150 (N.D.1980) (citations omitted) (emphasis in original), we explained the basis for granting reformation of a written instrument on the basis of mutual mistake:

We have recognized that equity will grant remedial relief in the nature of reformation of a written instrument, resulting from a mutual mistake, when justice and conscience so dictate. However, in actions for reformation, a presumption arises from the terms of the instrument that it correctly expresses the true agreement and intention of the parties.

. . . .

Each case involving the reformation of a contract on grounds of fraud or mutual mistake must be determined upon its own particular facts and circumstances. In considering whether or not a mutual mistake exists, the court can properly look into the surrounding circumstances and take into consideration *all* facts which disclose the intention of the parties.

[¶ 14] A party seeking reformation has the burden to prove by clear and convincing evidence that a written agreement does not fully or truly state the agreement the parties intended to make. *Dahl v. Messmer*, 2006 ND 166, ¶ 9, 719 N.W.2d 341. For a mutual mistake to justify reformation of an agreement, the party seeking reformation must show that, when the agreement was executed, both parties intended to say something different from what was said in the document. *Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 15, 703 N.W.2d 330. Whether there has been a mutual mistake sufficient to support a reformation claim is a question of fact. *Id.* A district court's findings of fact will not be reversed on appeal unless they are clearly erroneous. N.D.R.Civ.P. 52(a).

[¶ 15] In denying the plaintiffs' claim for reformation of the parties' agreement, the district court stated:

The facts established that the settlement agreement in question was the product of intense negotiations between seasoned attorneys over a protracted period of time. The agreement may have undergone as many as 26 written revisions before the final product was submitted to the Court. The use of a specific number as the denominator in the equation for calculating class members' claims was deliberate and not inadvertent or mistaken.

[¶ 16] During the settlement negotiation process, the parties included in the mathematical formula for calculating payment of claims to class members the following definition of "b" as the denominator in the equation: "the aggregate amounts paid by Koch directly to the Class Members for all oil lease purchases from selling points within the Belfield Area (Area 951) *between January 1, 1975 and December 31, 1988*." When Koch approached the plaintiffs with the idea of inserting a specific number as the denominator for "b" instead of the formulaic expression of the denominator, extensive consideration and analysis of that proposal was undertaken by the plaintiffs before they agreed to insert the $4.2 billion amount as the denominator for "b."

[¶ 17] The evidence shows the parties were aware, during the negotiations, that the $4.2 billion number proposed by Koch might not be accurate and might constitute as much as a 15 percent deviation from the actual amount of aggregate oil purchased by Koch during the relevant period. With that knowledge, the parties agreed to insert the $4.2 billion number into the formula as the agreed-upon representation of the aggregate oil purchased. Subsequently, the claims administrator determined the actual amounts paid by Koch directly to each claimant. When those amounts were totaled, the parties realized that the actual aggregate amount Koch paid to all

class members was $3.6 billion instead of $4.2 billion.

[¶ 18]   We conclude the district court's findings on this issue are not clearly erroneous and they support the court's conclusion that the plaintiffs have failed to prove by clear and convincing evidence the settlement agreement did not fully or truly state the agreement the parties intended to make.   When the plaintiffs agreed to insert the $4.2 billion figure as the denominator in the formula, they were aware the number might not be accurate and the actual number could be higher or lower. The plaintiffs cannot now predicate "mutual mistake" on the ground the actual number was a lower number.   The parties were aware of that possibility.   Yet, they included no provision for modifying the number if that possibility later became a reality.   The parties, after much consideration and negotiation, deliberately intended to include the $4.2 billion amount as the denominator in the formula for calculating payment of claims to class members.   When the parties executed the agreement, they were well aware that the actual aggregate purchases might be more or less than the $4.2 billion amount, but they, nevertheless, agreed to use that figure in the formula.   Consequently, the fact that the actual number was a lower number does not constitute a mutual mistake.   Under these circumstances, we hold the district court did not err in denying the plaintiffs' claim for reformation of the agreement.

### III

■ [¶ 19]   The three class representatives requested incentive payments totaling $180,000, in addition to their formula share of the settlement award.   The district court awarded incentive payments totaling $75,000, and the class representatives on appeal assert:

The class representatives shouldered a burden and assumed a risk unmatched by any other class member.   It is correct to say that without them there would be no settlement and, thus, no benefit to the class.   For all of these reasons, plaintiffs requested incentive payments to each of the class representatives in the amount of $180,000, divided equally, which amounts [to] .33% of the settlement fund.   This would award $60,000 to each class representative.

. . . .

[T]he district court erred in its award of incentive payments to class representatives. . . .   [T]he court erred legally in requiring proof of "extraordinary" effort on behalf of the named plaintiffs, when the law requires careful consideration of the efforts expended and benefits received in pursuing the class action.

[¶ 20]   In its memorandum opinion, the district court explained its reasoning for awarding $75,000 in incentive payments:

In the Court's view the fact that the case had its genesis in Judge Burdick's realization, upon learning of the Hansen decision, that he might have a cause of action against Koch and the activities of Judge Burdick and the other named class representatives including Elizabeth Cantarine as personal representative of Judge Burdick's estate, in carrying the brunt of this litigation over a 10–year period (and continuing) warrants an award of an incentive payment.   However[,] the fact that this class action lawsuit was a lawyer-driven affair, that there is no evidence that the class representatives rendered extraordinary services to the class, suffered personal hardship or spent substantial time in personal investigation of the case all supports an award of an incentive payment less than requested.   After considering the arguments presented, the

Court determines that an incentive payment is appropriate and the sum of $75,000 to be divided equally among the named class representatives is fair and reasonable under the circumstances presented.

[¶ 21] This Court has not previously considered the propriety and parameters of incentive awards in class action lawsuits. The federal courts have applied an abuse-of-discretion standard in reviewing a trial court's decision on the class representative's request for an award of incentive payments. *See Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir.2003); *Staton v. Boeing Co.,* 327 F.3d 938, 978 (9th Cir.2003); *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 410 (7th Cir.2000). We believe the abuse-of-discretion standard is the appropriate standard of review to apply to this issue. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Schaefer v. Souris River Telecomm. Coop.,* 2000 ND 187, ¶ 14, 618 N.W.2d 175.

[¶ 22] Numerous federal courts have authorized incentive awards to class representatives for "their often extensive involvement with a lawsuit." *See Hadix,* 322 F.3d at 897. In *Roberts v. Texaco, Inc.,* 979 F.Supp. 185, 200 (S.D.N.Y.1997) (citations omitted), the federal district court explained:

> In this Circuit, the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award. The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

Other jurisdictions have likewise granted incentive awards upon substantially the same grounds.

The Seventh Circuit Court of Appeals, in *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998) (citation omitted), further explained:

> Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

*See also Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D.Cal. 1995) (criteria courts may consider in determining whether to make an incentive award include the risk to a class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit enjoyed by the class representative as a result of the litigation). Granting of incentive awards is not universal, and in deciding the issue a court must be vigilant

in ensuring that the settlement is fair to all members of the class and that the providing of special incentives does not result in the class representatives being more concerned with maximizing those incentives than with obtaining the best results for all class members. *See Staton,* 327 F.3d at 977; *Hadix,* 322 F.3d at 897.

[¶ 23] Here, the class representatives assert the district court "erred legally in requiring proof of 'extraordinary' effort on behalf of the named plaintiffs, when the law requires careful consideration of the efforts expended and benefits received in pursuing the class action." We disagree that the district court erred in considering whether the class representatives "rendered extraordinary services to the class."

[¶ 24] In upholding the lower court's refusal to grant the lead plaintiff an incentive award, the Seventh Circuit Court of Appeals in *Montgomery,* 231 F.3d at 410, explained:

> While the lead plaintiff was the only named plaintiff, was subjected to a rough deposition, and was portrayed by the Montgomery defendants in an unfavorable light during the litigation, it does not appear that he had to devote an inordinate amount of time to the case or that, as a former employee, he suffered or risked any retaliation by Aetna Plywood.

The federal district court in *Weseley v. Spear, Leeds & Kellogg,* 711 F.Supp. 713, 720 (E.D.N.Y.1989), likewise refused to grant the class representative a special incentive award after considering "he did not perform any extraordinary services to the class."

[¶ 25] We conclude the district court considered and weighed the relevant factors in deciding to grant a $75,000 incentive payment to the class representatives. The court recognized the case had "its genesis in Judge Burdick's realization . . .

that he might have a cause of action against Koch" and the class representatives "carr[ied] the brunt of this litigation over a 10–year period." However the court also recognized "this action was a lawyer-driven affair," and there was no evidence the class representatives "rendered extraordinary services to the class, suffered personal hardship or spent substantial time in personal investigation of the case." An incentive award, unlike an award of actual compensatory damages, for example, is not capable of a precise determination, and that is why we review the award under the abuse-of-discretion standard. The district court's decision reflects that it was the product of a rational mental process leading to a reasoned determination, and it was not arbitrary, unreasonable, or unconscionable. We, therefore, conclude the district court did not abuse its discretion in making the award of incentive payments.

IV

[¶ 26] The plaintiffs assert the district court erred in awarding attorney fees. They had requested an award of attorney fees, costs, and expenses totaling $6,740,952. The court awarded them attorney fees, costs, and expenses totaling $4,671,124. The attorney fee portion of that award was $3,930,172 (including paralegal fees).

[¶ 27] In a rare exception to the American rule that parties' bear their own costs in litigation, a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney fees from the fund as a whole. *Horst v. Guy,* 211 N.W.2d 723, 732 (N.D.1973). *See also In re Copley Pharm., Inc.,* 1 F.Supp.2d 1407, 1409 (D.Wyo.1998). Rule 23(p), N.D.R.Civ.P., authorizes the district court to award attorney fees in class action litigation:

(1) Attorney's fees for representing a class are subject to control of the court.

. . . .

(3) If a prevailing class recovers a judgment for money or other award that can be divided for the purpose, the court may order reasonable attorney's fees and litigation expenses of the class to be paid from the recovery.

Rule 23(p)(5), N.D.R.Civ.P., sets forth the factors the district court must consider in awarding attorney fees in a class action:

(5) In determining the amount of attorney's fees for a prevailing class the court shall consider the following factors:

(A) the time and effort expended by the attorney in the litigation, including the nature, extent, and quality of the services rendered;

(B) results achieved and benefits conferred upon the class;

(C) the magnitude, complexity, and uniqueness of the litigation;

(D) the contingent nature of success;

(E) in cases awarding attorney's fees and litigation expenses under paragraph (4) because of the vindication on an important public interest, the economic impact on the party against whom the award is made; and

(F) appropriate criteria included in the North Dakota Code of Professional Responsibility.

[¶ 28] The district court is considered an expert in determining an award of attorney fees, and its decision concerning the amount and reasonableness of attorney fees will not be overturned on appeal absent a clear abuse of discretion. *CybrCollect, Inc. v. North Dakota Dep't of Fin. Inst.*, 2005 ND 146, ¶ 39, 703 N.W.2d 285. As we stated in ¶ 21, a trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Schaefer*, 2000 ND 187, ¶ 14, 618 N.W.2d 175; *City of Medora v. Golberg*, 1997 ND 190, ¶ 17, 569 N.W.2d 257.

[¶ 29] In awarding attorney fees, the district court considered each of the factors under N.D.R.Civ.P. 23(p)(5). The court determined the time, effort, and quality of legal services rendered by the class action attorneys warranted a sizable award of attorney fees in addition to the costs and expenses of the litigation. As a factor in determining the size of the award, the court considered not only the total $18 million fund available for claims but also the potential actual total distribution to the members of the class who had filed timely claims:

In the Court's view a rational relationship or connection between the amount of attorney's fees allowed and the actual distribution to the class insures that class counsel has an incentive to be diligent and maximize the amount of the actual recovery likely to be paid to the class. If there is no connection defendants such as Koch have a powerful means to entice class counsel to settle the lawsuit even though the actual distribution to the class may end up to be minimal. The rational relationship adopted by the Court in this case is that allowed attorney's fees will not exceed the amount of the remaining claim fund that has been claimed assuming that all timely filed claims are paid.

The Court's decision does not focus only on the actual payout and does consider the other factors discussed by the Court above. Even though some or

even all of the Category One[1] claims may be denied, the Court's decision does not make the award of attorney's fees contingent on winning the Category One litigation. The decision to not make some of the attorney's fees contingent on the outcome of the Category One litigation recognizes the considerable time and effort already expended by class counsel and the concessions they have negotiated from Koch regarding Category One claims.

[¶ 30] Relying on the United States Supreme Court decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), the plaintiffs assert it was error for the district court to limit the amount of attorney fees based upon the amount distributed to class members filing timely claims rather than based upon the entire $18 million settlement pool of funds.

[¶ 31] The question presented in *Boeing Co.*, 444 U.S. at 477, 100 S.Ct. 745, was whether a proportionate share of fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by the judgment. The defendant, Boeing Company, asserted attorney fees could only be awarded from the actual claimed funds:

Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it. Second, because Boeing had a colorable claim for the return of the unclaimed money, awarding attorney's fees from those funds might violate the American rule against shifting fees to the losing party. Therefore, Boeing contended, the District Court should award attorney's fees from only the portion of the fund actually claimed by class members.

The United States Supreme Court concluded attorneys representing a successful class are entitled to fees from the fund as a whole, not just claimed funds:

> Since the decisions in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable

---

1. In the settlement agreement the parties defined "Category 1 Class Members" to mean: the following entities and any of their past and present parents, subsidiaries, affiliated corporations and entities, predecessors, successors, and assigns: Amoco; Amerada Hess; Chevron; Tenneco; Koch Exploration; Aviara Energy; BHP; Diamond Shamrock; Total Petroleum; Union Oil Company of California; Phillips; Murphy; Depco; Louisiana Land & Exploration; Jerry Chambers Exploration; Farmers Union Central Exchange; Petroleum, Inc.; Earl Schwartz Co.; Apache; Conoco; Pure Oil Company; Chandler & Associates; Ladd Petroleum: Unicon; and Samedan. With respect to the foregoing, Koch asserts that it has individualized defenses relating to (among other things) the statute of limitations and consent on the ground that the Category 1 Class Members had either actual notice of potential mismeasurement claims against Koch, or the ability and opportunity to have discovered any mismeasurement by Koch during the time period in question. The parties defined "Category 2 Class Members" to mean "all Class Members who are not Category 1 Class Members."

attorney's fee from the fund as a whole. *See Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); cf. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The common-fund doctrine reflects the traditional practice in courts of equity, *Trustees v. Greenough, supra,* 105 U.S. at 532–537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees, *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. at 257–258, 95 S.Ct. 1612. . . .

Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery. . . .

Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs.

*Boeing Co.,* 444 U.S. at 478–480, 100 S.Ct. 745.

[¶ 32]  However, in *Boeing,* the United States Supreme Court did not hold it would be improper for a court, in determining the amount of reasonable attorney fees to award, to consider not only the available settlement fund, but also the amount of actual claims on the fund. The *Boeing* decision did not address that issue, and Justice Sandra Day O'Connor, writing separately in a denial of a petition for writ of certiorari in *International Precious Metals Corp. v. Waters,* 530 U.S. 1223, 1223–224, 120 S.Ct. 2237, 147 L.Ed.2d 265 (2000), clarified that the issue was not decided in *Boeing:*

This case involves an award of attorney's fees that, by any measure, is extraordinary. Respondents brought a securities class action, alleging that petitioners had fraudulently solicited and stimulated excessive trading of commodities options. The parties ultimately settled the suit, whereby petitioners agreed to create a $40 million "reversionary fund" for the class plaintiffs. Under the terms of the settlement, the portion of the fund not claimed by class members and not paid to respondents in attorney's fees and expenses was to revert to petitioners.

After the parties reached their agreement, the District Court approved respondents' application for attorney's fees in the amount of $13,333,333, or one-third of the reversionary fund. The figure was unrelated to the amount actually claimed by class plaintiffs. As it later turned out, the actual distribution to class members was $6,485,362.15. Accordingly, the fee award approved by the District Court was more than twice the amount of the class' actual recovery. . . .

In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), we upheld an award of attorney's fees in a class action where the award was based on the total fund available to the class rather than the amount actually recovered. *Id.*, at 480–481, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676. We had no occasion in *Boeing*, however, to address whether there must at least be *some* rational connection between the fee award and the amount of the actual distribution to the class. The approval of attorney's fees absent any such inquiry could have several troubling consequences. Arrangements such as that at issue here decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class. And they could encourage the filing of needless lawsuits where, because the value of each class member's individual claim is small compared to the transaction costs in obtaining recovery, the actual distribution to the class will inevitably be minimal. . . .

Although I believe this issue warrants the Court's attention, this particular case does not present a suitable opportunity for its resolution.

*See also Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F.Supp. 375, 379 (D.Mass.1997) (proportionality of attorney fee to the relief actually accruing to the class is an important consideration in assessing the reasonableness of the fee award); *Van Gemert v. Boeing Co.*, 590 F.2d 433, 441 (2nd Cir.1978) (in determining fair compensation for class action attorneys the judge may take into account the number of plaintiffs likely to claim from the common fund but the claimed portion of the fund does not place a ceiling on the fee), *aff'd*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

[¶ 33] Here, the district court considered all of the relevant factors in determining the amount of attorney fees to award. On this record, we are not persuaded the district court abused its discretion in considering the relationship of the size of the attorney fees awarded with the amount of funds actually distributed to class members filing timely claims.

[¶ 34] The plaintiffs also assert the district court erred in evaluating the customary fees of local attorneys when the court stated that $175 per hour was "on the high end" of the customary fees charged. The plaintiffs' summary of fees and costs shows attorney fees earned on an hourly basis totaling $2,837,863 for 16,295.48 attorney hours worked. That computes to an hourly rate of $174.15. With regard to this average hourly wage, the district court stated:

> The average of almost $175 an hour for attorney fees is on the high end of the customary hourly fee in this area but of course the average hourly fee would not be for similar legal services because local practitioners are not often involved in class action lawsuits making comparison of the hourly rate difficult to make.

We cannot understand how the plaintiffs can predicate error on this statement by the district court, when the court awarded attorney fees based upon the hourly rate of $174.15 submitted to the court and requested by the plaintiffs. In addition to awarding the plaintiffs the total amount of earned attorney fees and paralegal fees requested on an hourly basis, the court awarded an additional $264,732.50 in attorney fees to reflect the complexity of the

litigation and the benefit conferred on the class. The result was a total attorney fee award of $3,930,172 (including paralegal fees), which constitutes 21.83 percent of the total common fund of $18 million available for claims.

[¶ 35] When considering a request for attorney fees in a class action lawsuit, the court takes on a fiduciary role on behalf of the class members:

> When an attorney makes a claim for fees from a common fund, his interest is "adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class." *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir.1993). This divergence of interests requires a court to assume a fiduciary role when reviewing a fee application, because there is often no one to argue for the interests of the class: class members with small individual stakes in the outcome will often fail to file objections because they lack the interest or resources to do so.... Thus ... a court must act as a fiduciary for the beneficiaries of a common fund, weighing the appropriate interests of the beneficiaries in light of the efforts of counsel on their behalf.

*In re Copley Pharm., Inc.,* 1 F.Supp.2d 1407, 1409 (D.Wyo.1998). In response to the plaintiffs' argument that the district court's authority in reviewing attorney fees in a class action is limited by an arm's length settlement agreement among the parties, the Fifth Circuit Court of Appeals stated in *Strong v. BellSouth Telecomm., Inc.,* 137 F.3d 844, 849 (5th Cir.1998):

> Counsel's position underestimates, however, the scope of the court's duty under Rule 23 to protect absent class members and to police class action proceedings. This duty is not limited to a review of the substantive claims included in the

agreement. Instead, the "duty to investigate the provisions of the suggested settlement includes the obligation to explore the manner in which fees of class counsel are to be paid and the dollar amount for such services." *Foster v. Boise–Cascade, Inc.,* 420 F.Supp. 674, 680 (S.D.Tex.1976), *aff'd,* 577 F.2d 335 (5th Cir.1978). To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees. *See Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir.1980). "The purpose of this salutary requirement is to protect the nonparty members of the class from unjust or unfair settlements affecting their rights" as well as to minimize conflicts that "may arise between the attorney and the class, between the named plaintiffs and the absentees, and between various subclasses." *Id.* at 1327–28. Moreover, the court's examination of attorneys' fees guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class.

[¶ 36] We are convinced the district court took seriously its duty to assess reasonable attorney fees for the lawyers representing the successful class while also insuring that the amount awarded was fair and just for all parties involved. We are not persuaded the district court's award of attorney fees was arbitrary, capricious, or unreasonable, nor are we persuaded the court misinterpreted or misapplied the law in reaching its decision. We, therefore, conclude the court did not abuse its discretion in awarding attorney fees.

## V

[¶ 37] We affirm the judgment.

[¶ 38]   DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.