Filed 5/11/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 87

First International Bank & Trust, Plaintiff

and

Village Homes at Harwood Groves, LLC 

a/k/a Village Homes at Harwood Groves 

Condominium Association, Danovic Properties, 

LLC, Marland Hoff, Virginia Hoff, Adams 

Development Corporation, Duane Rogne, Daniel 

Shelstad, Gary Cornforth Revocable Living Trust, 

Gerald Hendricks, Jane Hendricks, Rogne Family, 

LLP, Ralph Peterson, Gwen Peterson, Robert Norwood, 

Richard Ripplinger, Jean Ripplinger, First International 

Bank & Trust, Arlan Anderson, Abner Selvig, John 

Volkerding and Molly Volkerding, David Halvorson, 

Valerie Halvorson, West Park II Investments, LLC and 

Ramsey National Bank & Trust as Trustee of the 

Daniel E. Shelstad IRA, Intervener Plaintiffs and Appellees

v.

D. Duane Peterson, MID AM Group, LLC, a North 

Dakota Limited Liability Company, and MID AM 

Group Realty, Defendants and Appellants

and

Auto-Owners Insurance Co., Defendant

No. 20100280

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John Charles Irby, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Stephannie Nicole Stiel, P.O. Box 2686, Fargo, N.D. 58108-2686, for intervenor plaintiffs and appellees.

Paul A. Sortland, 431 South 7th Street, Suite 2440, Minneapolis, Minn. 55415, for defendants and appellants.

First International Bank & Trust v. Peterson

No. 20100280

Crothers, Justice.

[¶1] D. Duane Peterson, Mid Am Group, LLC, and Mid Am Group Realty (collectively “Mid Am”) appeal from a summary judgment declaring that Village Homes at Harwood Groves, LLC, also known as Village Homes at Harwood Groves Condominium Association (“Association”), is entitled to $215,503.22 in insurance proceeds.  We affirm, concluding the Association has standing and the district court did not err in ruling the Association is entitled to the insurance proceeds.

I

[¶2] Mid Am Group, LLC, is owned by D. Duane Peterson and did business under the name Mid Am Group Realty.  Mid Am developed and built the Village Homes at Harwood Groves Condominiums (“Village Homes”) in Fargo.  Village Homes consists of fifty condominium units in one building.  Mid Am obtained financing to build and develop the condominiums through First International Bank & Trust.  On May 24, 2005, Mid Am recorded the Declaration, Bylaws, and Covenants and Restrictions (“condominium documents”) for Village Homes with the Cass County Recorders Office.  The Village Homes at Harwood Groves Condominium Association was initially an unincorporated condominium association, which was formed when Mid Am recorded the condominium documents, and was the predecessor to the present Association.  Mid Am did not create a board of managers for the condominium association.  Mid Am obtained insurance for Village Homes through Auto-Owners Insurance Company.  Mid Am and Mid Am Group Realty were listed as the insured parties.

[¶3] On September 12, 2007, a hail storm occurred.  Mid Am submitted a proof of loss with Auto-Owners and made a claim for damage to Village Homes’ roof under the insurance policy.  Auto-Owners adjusted the claim in the amount of $215,503.22.  At the time of the hail storm, ten of the fifty condominium units had been sold, and Mid Am owned the remaining units.

[¶4] On October 18, 2007, First International initiated foreclosure proceedings on the forty condominium units Mid Am owned, which were mortgaged and secured Mid Am’s debt.  On February 28, 2008, judgment was entered in favor of First International.  A foreclosure sale was held in April 2008, and First International purchased the remaining forty condominium units for the full amount of Mid Am’s indebtedness and costs.  First International later sold the forty units to Adams Development Corporation, and five of the units were later sold or transferred to other purchasers.  In September 2009, the condominium unit owners held their first annual meeting and elected a board of managers for the condominium association.  In October 2009, Village Homes at Harwood Groves, LLC was established and is the successor to the unincorporated condominium association formed under the condominium documents.

[¶5] On November 20, 2008, Auto-Owners issued a settlement check for the claim from the hail storm made payable to Mid Am, Mid Am Group Realty, and First International.  In March 2009, First International brought an action against Mid Am and Auto-Owners, seeking a declaration that the insurance proceeds be paid to First International and that Mid Am was not entitled to the proceeds.  First International argued it was entitled to the proceeds under the terms of Mid Am’s mortgage and as an additional insured.  Mid Am denied First International’s claims and sought possession of the proceeds.  Auto-Owners agreed to pay the insurance proceeds to the party the court determined was the proper party.  First International and Mid Am both moved for summary judgment, and the district court granted Mid Am’s motion.  The court ruled First International was not entitled to the insurance proceeds as a “loss payee” or under the terms of the mortgage, all of the interested parties were not named in the action, and interested parties would have forty-five days to join the action and amend the pleadings.  The court also ordered Auto-Owners to pay the insurance proceeds into the court.  Auto-Owners was dismissed from the action after paying the court the insurance proceeds.

[¶6] The ten unit owners who owned at the time of the hail storm, the current unit owners and the Association (collectively “Intervener Plaintiffs”) moved to intervene.  The district court granted their motion.  In October 2009, Mid Am’s attorney filed a Notice of Attorney Lien.  The Intervener Plaintiffs filed an objection to the lien.  The Intervener Plaintiffs and Mid Am both moved for summary judgment.  The court granted the Intervener Plaintiffs’ motion, denied Mid Am’s motion and declared the Association was entitled to the insurance proceeds.  The court ruled the Association and unit owners had standing to enforce the Declaration and Bylaws.  The court ruled Mid Am was the de facto board of managers, was required to purchase insurance and had a fiduciary duty to act in good faith and in furtherance of the unit owners’ legitimate interests.  The court further held the unit owners and the Association were the intended beneficiaries, the unit owners had an expectation under the condominium documents that the insurance proceeds would be applied to repair the roof and the unit owners had a right to rely on the condominium documents.  The court ruled Mid Am would be unjustly enriched if it was allowed to keep any portion of the insurance proceeds.  The court also ruled the attorney lien was without effect and is released because it does not meet the statutory requirements.

II

[¶7] The standard for summary judgment is well-established:

“‘Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.’”

Lucas v. Riverside Park Condo. Unit Owners Ass’n
, 2009 ND 217, ¶ 16, 776 N.W.2d 801 (quoting 
Barbie v. Minko Constr., Inc.
, 2009 ND 99, ¶ 5, 766 N.W.2d 458).

III

[¶8] Mid Am argues the district court erred in allowing the Association to intervene and in deciding the Association was entitled to the insurance proceeds because it lacks standing.  Citing 
Jablonsky v. Klemm
, 377 N.W.2d 560 (N.D. 1985), Mid Am contends the Association does not have standing and cannot sue on the unit owners behalf because it does not have an ownership interest in the common elements.

[¶9] “Standing is a question of law, which we review de novo.”  
Hagerott v. Morton Cnty. Bd. of Comm’rs
, 2010 ND 32, ¶ 9, 778 N.W.2d 813.  Courts do not render advisory opinions and decide purely abstract questions; therefore plaintiffs must demonstrate they have standing by alleging “such a personal stake in the outcome of a controversy to justify a court’s exercise of remedial powers on [the plaintiff’s] behalf.”  
Ackre v. Chapman & Chapman, P.C.
, 2010 ND 167, ¶ 11, 788 N.W.2d 344 (quoting 
Kjolsrud v. MKB Management Corp.
, 2003 ND 144, ¶ 13, 669 N.W.2d 82).  To have standing plaintiffs must show they have “suffer[ed] some threatened or actual injury resulting from the putatively illegal action,” and the “harm must not be a generalized grievance shared by all or a large class.”  
Nodak Mut. Ins. Co. v. Ward Cnty. Farm Bureau
, 2004 ND 60, ¶ 11, 676 N.W.2d 752.

[¶10] In 
Jablonsky
, 377 N.W.2d at 569, this Court held a condominium association was not a real party in interest in an action against a developer to recover damages for a defective retaining wall because the association did not have an ownership interest in the common elements involved in the lawsuit and because N.D.C.C. ch. 47-04.1 does not specifically authorize a condominium association to bring a suit on behalf of unit owners.  However, this case is different from 
Jablonsky
 because it is not an action for damages.  This is a declaratory action to determine who is entitled to the insurance proceeds.

[¶11] An association may have “associational standing” to bring a suit on behalf of its members, even if the association has not suffered an injury to itself, but generally only when the association is seeking declaratory, injunctive, or other prospective relief.  
Hunt v. Washington State Apple Adver. Comm’n
, 432 U.S. 333, 342-43 (1977).  Other courts have applied associational standing to homeowners or condominium associations and ruled the associations have standing.  
See
 
Grace United Methodist Church v. City of Cheyenne
, 451 F.3d 643, 670-71 (10th Cir. 2006); 
Buffalo Park Dev. Co. v. Mountain Mut. Reservoir Co.
, 195 P.3d 674, 688 (Colo. 2008); 
Conestoga Pines Homeowners’ Ass’n, Inc. v. Black
, 689 P.2d 1176, 1177-78 (Colo. App. 1984); 
1000 Grandview Ass’n, Inc. v. Mt. Washington Assoc.
, 434 A.2d 796, 797-98 (Pa. Super. Ct. 1981); 
Anderson v. New Prop. Owners’ Ass’n of Newport, Inc.
, 122 S.W.3d 378, 384-85 (Tex. App. 2003).

[¶12] We have recognized an organization may have associational standing to sue on its members’ behalf, if: “(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.”  
Nodak Mut. Ins.
, 2004 ND 60, ¶ 14, 676 N.W.2d 752 (quoting 9 V. Braucher, B. Jacobsthal & G. O’Gradney, 
Fletcher Cyclopedia of the Law of Private Corporations
, § 4227, at 47-49 (1999 Rev. ed.)); 
see also
 
Hunt
, 432 U.S. at 343.  An association’s standing depends on the nature of the relief sought because if the association seeks declarative, injunctive or other prospective relief, the association’s members will see the benefit of the remedy.  
Hunt
, at 343.

[¶13] In this case, the Association meets the requirements for associational standing.  The Association’s members have standing to sue in their own right.  All condominium unit owners are members of the Association.  Under the Declaration, each unit owner has a one-fiftieth ownership interest in the common elements.  Mid Am concedes the individual unit owners who purchased units before the damage to the roof occurred are entitled to a portion of the insurance proceeds.  An association has standing when at least some of its members would have standing to bring the action in their own right.  
See
 
Hunt
, 432 U.S. at 342; 
see also
 
International Union, United Auto., Aerospace and Agric. Implement Workers of America v. Brock
, 477 U.S. 274, 282-86 (1986) (recognizing first part of 
Hunt
 is met when at least some association members would have standing).

[¶14] The interests that the Association seeks to protect are germane to its purpose.  Under the terms of Village Homes’ Covenants, the Association has the power and duty to operate, maintain, administer and improve the condominium’s common areas; enforce the covenants and restrictions; maintain insurance coverage for the common areas; and collect and disburse the assessments and charges.  The Association was created for the purpose of operating and maintaining the condominium’s common areas and elements.  The roof is a common element, and the Association has a duty to repair the damage to the roof.  The insurance proceeds are for the damage to the roof.  The Association’s purpose is consistent with the interests it seeks to protect.

[¶15] The claim asserted and the relief requested do not require the unit owners’ participation in the lawsuit.  The individual unit owners are also plaintiffs in the lawsuit, but their participation was not necessary for the claim asserted or the relief requested.  The action was brought to determine who is entitled to the insurance proceeds.  Under the condominium documents, the Association has an obligation to insure the property and a duty to make the repairs to the common elements.  The Association must use the insurance proceeds to repair the common elements.  The action does not require an award of damages and individualized proof is not required to determine who the insurance proceeds should be paid to.

[¶16] Under the facts of this case, we conclude the Association has standing.

IV

[¶17] Mid Am argues the district court erred in granting the Intervener Plaintiffs’ summary judgment motion because the Association and other Intervener Plaintiffs are not entitled to any of the insurance proceeds.  Mid Am contends the district court ruled First International was not entitled to any insurance proceeds under either the mortgage terms or as a loss payee and, therefore, unit owners who purchased units through First International are also not entitled to the proceeds.  The Intervener Plaintiffs argue the district court correctly decided the Association is entitled to the insurance proceeds because the condominium documents require the insurance proceeds be used to repair the roof and because Mid Am has a fiduciary obligation to use the insurance proceeds to repair the roof.

[¶18] Chapter 47-04.1, N.D.C.C., provides statutory laws governing condominiums.  The declaration, restrictions and bylaws for a condominium project must be recorded in the county where the property is located.  
See
 N.D.C.C. §§ 47-04.1-02, 47-04.1-04, 47-04.1-07.  Before any condominium units can be sold, a declaration of restrictions must be recorded; the restrictions are enforceable equitable servitudes, which may be enforced by any owner of a condominium unit.  N.D.C.C. § 47-04.1-04.  The bylaws are rules and regulations providing for the administration of the condominium project, including “the maintenance of common elements, limited common elements where applicable, assessment of expenses, payment of losses, division of profits, disposition of hazard insurance proceeds, and similar matters.”  N.D.C.C. § 47-04.1-07(1).  The recorded declaration and bylaws put purchasers and owners on notice of the restrictions that may affect their interest in the property.  
Breene v. Plaza Tower Ass’n
, 310 N.W.2d 730, 733 (N.D. 1981).

[¶19] Mid Am recorded the condominium documents on May 24, 2005.  The documents provide:

“[Mid Am] has caused to be created an unincorporated association, known as Village Homes at Harwood Groves Condominium Association, to which are assigned the powers and duties of operating, maintaining, administering and improving the Common Areas, Limited Common Areas and enforcing the covenants and restrictions and collecting and disbursing the assessments and charges hereinafter created.”

The condominium documents state the condominium association “shall be responsible for the exclusive management and control of the Common Area and all improvements thereon . . . and shall keep the same in good, clean, attractive and sanitary condition, order and repair.”  The board of managers are selected members of the condominium association who govern the condominium’s affairs, have the powers and duties to operate and maintain the common elements and areas, determine the amount required for the operation and maintenance of the condominium, collect common charges from unit owners and make repairs to the condominium property after damage or destruction by fire or other casualty.  The board of managers is required to purchase and maintain insurance for the property in amounts sufficient to cover damage to the exterior of the building and the common elements and to maintain and repair the common elements and include the cost of the repairs in the common expenses charged to each unit owner.  The condominium association is required to keep the condominium property in good condition and repair, and any improvements are under the condominium association’s supervision and control.  Under the terms of the condominium documents, the board of managers shall be elected at the first annual meeting of the unit owners, which shall be held after seventy-five percent of the condominium units are sold.

[¶20] The Association was not formed and did not assume management of the condominium until October 2009; however, Mid Am created the unincorporated condominium association when the condominium documents were filed.  
See
 
Board of Managers of Weathersfield Condo. Ass’n v. Schaumburg Ltd. P’ship
, 717 N.E.2d 429, 432 (Ill. App. Ct. 1999) (association established by recording of the condominium documents); 
Orange Grove Terrace Owners Ass’n v. Bryant Props., Inc.
, 222 Cal. Rptr. 523, 523 (Cal. Dist. Ct. App. 1986) (association is successor in interest to unincorporated owners association formed by condominium documents developer filed).  Mid Am did not create a board of managers, but did assume the board’s duties and obligations.  Mid Am obtained insurance for the property, as it was required to do under the condominium documents.  The district court found and Mid Am concedes it was the de facto board of managers.  Although the condominium association was not effectively organized until the Association was formed and a board of managers was elected, Mid Am controlled the unincorporated condominium association and was responsible for the association’s and board of managers’ duties and obligations when the damage to the roof occurred.  
See
 
Goddard v. Fairways Dev. Gen. P’ship
, 426 S.E.2d 828, 832-33 (S.C. Ct. App. 1993) (developer failed to effectively organize a condominium association and could be liable for costs to repair common area because it had a responsibility to insure common areas were in good repair and to insure the association had sufficient funds to maintain common areas); 
Munder v. Circle One Condo., Inc
., 596 So. 2d 144, 145 (Fla. Dist. Ct. App. 1992) (developer retained full control of association because it did not create a board of directors and therefore was required to purchase fire insurance under the bylaws and is liable for the fire damage).  If Mid Am had remained solvent, under the terms of the condominium documents, it would have had a duty to use the insurance proceeds to repair any damage to the roof.  Although Mid Am no longer controls the condominium association, its successor is entitled to the insurance proceeds.  The Association is the unincorporated condominium association’s successor and, therefore, is entitled to the insurance proceeds.  We conclude the district court did not err in granting the Intervener Plaintiffs’ motion for summary judgment and deciding the Association is entitled to the insurance proceeds.

V

[¶21] Mid Am argues the district court erred in deciding the attorney lien filed by its attorney does not meet the statutory requirements and is not effective.  Mid Am contends its counsel should be rewarded because there would have been no insurance proceeds available for the Intervener Plaintiffs if not for the actions of its attorney.

[¶22] Under N.D.C.C. § 35-20-08(2), an attorney has a lien for a general balance of compensation for each case upon “[m]oney due the attorney’s client in the hands of the adverse party, or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed . . . .”  Here, the district court released the lien, finding the lien had no effect and did not meet the statutory requirements.  Mid Am was not due any money; therefore the lien does not meet the statutory requirements.

[¶23] Mid Am’s attorney also is not entitled to the money under a “common fund” theory.  Generally, parties bear their own costs of litigation, but “a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney fees from the fund as a whole.”  
Ritter, Laber and Assoc., Inc. v. Koch Oil, Inc.
, 2007 ND 163, ¶ 27, 740 N.W.2d 67.  “The purpose of the common fund doctrine is to spread out the attorney’s fees proportionately among those who benefit from the suit, recognizing ‘that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant’s expense.’”  
Mann v. North Dakota Tax. Comm’r
, 2007 ND 119, ¶ 38, 736 N.W.2d 464 (quoting 
Boeing Co. v. Van Gemert
, 444 U.S. 472, 478 (1980)).

[¶24] However, the common fund doctrine generally applies only in limited types of cases.  
Ritter
, 2007 ND 163, ¶ 27, 740 N.W.2d 67 (class action); 
In re Estate of Rohrich
, 496 N.W.2d 566, 572 (N.D. 1993) (probate).  Furthermore, the purpose of the common fund doctrine would not be served in this case because the Intervener Plaintiffs paid their own attorney’s fees for the litigation and were not unjustly enriched.  We conclude the district court did not err in deciding the attorney lien was without effect.

VI

[¶25] We conclude the Association has standing, the district court did not err in declaring the Association is entitled to the insurance proceeds and the court did not err in deciding the attorney’s lien was without effect.  We affirm the summary judgment.

[¶26] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.